UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
IUSACELL, S.A. DE C.V.,

                 Plaintiff,

     - against -

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                 Defendant.
----------------------------------------X

**MEMORANDUM AND ORDER**

14 Civ. 2697 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This action arises out of a soured business relationship among plaintiff Iusacell, S.A. de C.V. ("Iusacell"), defendant International Business Machines Corporation ("IBM"), and defendant's subsidiary, IBM de México, Comercialización y Servicios, S. de R.L. de C.V. ("IBM Mexico"). IBM moves for a stay on the ground that this action involves issues in common with those to be determined in an International Chamber of Commerce ("ICC") arbitration now pending between IBM Mexico and Iusacell. For the reasons stated herein, the Court grants IBM's motion.

## BACKGROUND[1]

### A.   The Underlying Dispute

Iusacell is a Mexican telecommunications company that serves millions of wireless telephone customers. Compl. ¶ 7; Arb. Request ¶ 2. IBM, a New York corporation, is a leading provider of information technology ("IT") services, and IBM Mexico is IBM's wholly owned Mexican subsidiary. Compl. ¶ 2; Def. Br. at 1; Tr. at 38-39. In December 2010, Iusacell entered into a long-term contract with IBM Mexico, called the Master Services Agreement ("MSA"), under which IBM Mexico would improve and operate Iusacell's IT systems. Compl. ¶¶ 4, 23; Arb. Request ¶ 5; Arb. Reply ¶ 8.[2]

Although IBM is not a party to the MSA, IBM was involved in the events that preceded its signing. In September 2010, IBM

---

[1]     We refer to the Complaint dated April 16, 2014 ("Compl."); Defendant's Memorandum of Law in Support of Motion to Stay, dated June 2, 2014 ("Def. Br."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Stay, dated July 17, 2014 ("Pl. Br."); the Declaration of Dr. Claus von Wobeser, Esq., dated July 16, 2014 ("Von Wobeser Decl."); the Declaration of Jonathan M. Moses, Esq., dated July 17, 2014 ("Moses Decl."), and exhibits thereto; the letter of Herbert M. Wachtell, Esq., dated July 28, 2014 ("Wachtell Ltr."); Defendant's Reply Memorandum of Law in Support of Motion to Stay, dated August 15, 2014 ("Def. Reply Br."); the Reply Declaration of Daniel E. González, Esq., dated August 15, 2014 ("González Reply Decl."); the Reply Declaration of Robert Patrick Vance, Jr., Esq., dated August 15, 2014 ("Vance Reply Decl."), and exhibits thereto; the transcript of oral argument held on October 2, 2014 ("Tr."); and the following pleadings in the arbitration styled IBM de México, Comercialización y Servicios, S. de R.L. de C.V. v. Iusacell, S.A. de C.V. (ICC Case No. 19879/ASM): (1) IBM Mexico's Request for Arbitration, dated November 27, 2013 ("Arb. Request") (Moses Decl. Ex. 4); (2) Iusacell's Answer and Counterclaims, dated January 13, 2014 ("Arb. Ans.") (Ex. D to the letter of Herbert M. Wachtell, Esq., and David Dunn, Esq., to the Honorable Richard J. Sullivan, dated April 3, 2014); and (3) IBM Mexico's Reply to Respondent's Answer and Counterclaim, dated February 21, 2014 ("Arb. Reply") (Moses Decl. Ex. 3).

[2]     Excerpts of the MSA are annexed to the Moses Decl. as Exhibit 2.

completed a review -- called an "audit" at the time -- of Iusacell's IT.  Compl. ¶¶ 14-16; Arb. Ans. ¶ 18; Arb. Reply ¶ 9. At the conclusion of this "audit," IBM executives participated in a presentation to Iusacell management in Mexico City, in which IBM proposed that Iusacell enter into a business relationship with IBM Mexico.  Compl. ¶ 16; Arb. Ans. ¶ 19; Arb. Reply ¶ 9.  According to Iusacell, IBM executives then participated in negotiations in New York City of the MSA's terms and in a Mexico City meeting with Iusacell's chairman intended to persuade Iusacell's board to authorize the MSA.  Compl. ¶¶ 21, 24; Arb. Ans. ¶ 20-21.

Iusacell alleges that IBM touted its worldwide capabilities and reputation during these preliminaries.  E.g., Compl. ¶¶ 37-38, 44, 65; Arb. Ans. ¶ 3.  IBM represented that it or IBM Mexico "would devote a 'virtually unlimited pool of IT skills and resources' to a Iusacell relationship, that it would assume 'all IT risk,' and that it would meet [various project] deadlines."  Compl. ¶ 29; see Arb. Ans. ¶ 33.  However, according to Iusacell, IBM privately intended that Iusacell would only be "provide[d] limited, finite resources, even if that meant the delay and non-completion of the promised [projects under the MSA]."  Compl. ¶ 33; see id. ¶ 30; Arb. Ans. ¶¶ 47-49.

Iusacell alleges that in practice, under the MSA, "capacity allocation decisions were made based on the overall interests of the worldwide IBM organization and not the needs of Iusacell and the requirements of IBM Mexico's contract with Iusacell." Compl. ¶ 31; see Arb. Ans. ¶ 49.  Iusacell alleges that IBM personnel were assigned to perform work under the MSA and that IBM and IBM Mexico made various misrepresentations to Iusacell after the MSA went into effect designed to lull Iusacell into believing that projects contemplated in the MSA would be delivered on schedule.  Compl. ¶ 36; Arb. Ans. ¶¶ 7, 32, 34.

Performance under the MSA commenced in February 2011. Compl. ¶ 40; Arb. Request ¶ 27.  By 2012, disputes developed over the pace and quality of IBM Mexico's performance and over the level of resources (or "capacity") that IBM Mexico devoted to the relationship.  E.g., Compl. ¶ 48; Arb. Ans. ¶ 34.  In November 2012, Iusacell notified IBM Mexico that it considered IBM Mexico to be in material breach of the MSA, and in May 2013, Iusacell notified IBM Mexico that it was terminating the MSA for cause.  Compl. ¶¶ 54, 56, 58; Arb. Request ¶ 33, 35.

By its terms, the MSA is governed by Mexican law.  MSA § 26.4.  The MSA contains an integration clause stating that it "constitutes the entire agreement between the Parties with respect to its subject matter and supersedes all prior and contemporaneous agreements and understandings between the

4

Parties, whether written or oral, concerning its subject matter." Arb. Reply ¶ 9 (quoting MSA § 26.1). The MSA also contains a "Limitations of Liability" provision that caps contract and tort damages under certain circumstances. MSA § 24.2.

Under the MSA, disputes are to be finally resolved by binding arbitration to be conducted in Mexico City under ICC rules. Id. §§ 27.2(c)-(e). The MSA further provides that a party to such arbitration "may . . . appeal to a court on a question of law arising out of a final award made in the proceedings and on whether the arbitration award exceeds the authority of the arbitrators." Id. § 27.2(g). The parties have treated this provision as purporting to authorize an appeal from an arbitration award to a Mexican court. Pl. Br. at 13; Tr. at 19, 40.


## B.  The ICC Arbitration

In November 2013, IBM Mexico commenced an ICC arbitration against Iusacell for breach of contract. In the arbitration, IBM Mexico alleges that, after it commenced performance under the MSA, it discovered that Iusacell had made "numerous misrepresentations" as to the state of Iusacell's IT and that "Iusacell's systems were in worse conditions than Iusacell had represented." Arb. Request ¶ 23. IBM Mexico alleges that it

performed its obligations nonetheless. Id. ¶¶ 27-32. IBM Mexico alleges that Iusacell's termination of the MSA was wrongful and in bad faith, and that it resulted in damages to IBM Mexico in excess of $300 million.[3] Id. ¶¶ 44-46.

Iusacell paints a different portrait in its answer, claiming that "IBM and IBM Mexico's grand promises" led Iusacell to believe that it would "have access to a virtually unlimited pool of IT skills and resources" and that IBM Mexico would "assume all IT risk," and that these "expectations [were] consistent with the terms of the MSA itself." Arb. Ans. ¶¶ 32-33 (internal quotation marks omitted). Despite these promises, Iusacell alleges that IBM Mexico only provided "'finite capacity'" to Iusacell, which was "completely at variance with what IBM represented -- with IBM Mexico's full awareness -- prior to and at the time the parties entered into the MSA." Id. ¶ 33. Additionally, IBM Mexico made "false and misleading" representations that, despite the "capacity limitations," its work was "largely on track." Id.

On the basis of these allegations and others, Iusacell pleads three counterclaims. The first is for breach of contract. Id. ¶¶ 82-86. Iusacell argues that IBM Mexico "violated fundamental obligations set forth in the MSA" by "fail[ing] to deliver promised [projects], only deliver[ing]

---

[3]    All amounts of money referred to herein are in U.S. dollars.

projects after significant delay, . . . deliver[ing] projects that . . . fail to meet contract specifications," and "fail[ing] to adequately run Iusacell's existing IT systems." Id. ¶¶ 82-83. Iusacell further argues that because IBM Mexico's breach of the MSA was "in bad faith[,] . . . grossly negligent and willfully in violation of its obligations," Iusacell is entitled to recover lost revenues and profits under the MSA. Id. ¶ 84. On the basis of a statement in IBM's pre-MSA presentation to Iusacell, Iusacell alleges that its lost profits amounted to $2.5 billion in EBITDA (i.e., earnings before interest, taxes, depreciation, and amortization). Id. ¶¶ 22, 85. In its second counterclaim, Iusacell seeks restitution in the amount of $100 million paid for undelivered or substandard work under the MSA. Id. ¶¶ 87-89.

Iusacell's third counterclaim is styled "[c]laim against IBM Mexico for awareness of and benefiting from dolo." Id. at 23 (heading VI.C.); id. ¶¶ 90-94. In this counterclaim, Iusacell alleges that "IBM knowingly misrepresented to Iusacell that IBM Mexico would have 'access to a virtually unlimited pool of IT skills and resources' to take on 'all IT risk,'" and that this "wrongful conduct . . . fraudulently induced [Iusacell] to enter into the MSA." Id. ¶ 90. Iusacell contends that this IBM conduct constituted "dolo," id. ¶¶ 11, 94, said to be a cause of action under Mexican law "analogous to common-law fraud," Pl.

Br. at 2 n.*.   Iusacell further alleges that "IBM Mexico was aware of IBM's misrepresentations . . . and committed an illicit act when it acquiesced in IBM's wrongful conduct, entering into the MSA when it knew Iusacell had been deceived."   Arb. Ans. ¶ 93; see id. ¶ 90.   Iusacell alleges that this "knowing acquiescence in IBM's dolo" provides a basis for awarding actual damages and lost profits of "nearly US$2.5 billion in EBIDTA" to Iusacell, without regard to the MSA's damages cap.   Id. ¶¶ 92-94.

The arbitral tribunal was confirmed in July 2014.  Wachtell Ltr. at 2; González Reply Decl. ¶ 5.   After discussions between counsel for IBM Mexico and Iusacell, in which Iusacell proposed that the final merits hearing before that tribunal should be scheduled for January 2016, that hearing has been scheduled to commence on February 29, 2016.  Wachtell Ltr. at 2; González Reply Decl. ¶¶ 7-8; Tr. at 19-20.  Although IBM is not a party to the MSA or the arbitration, IBM has agreed to guarantee any arbitration award against IBM Mexico.  Compl. ¶ 10; Arb. Ans. ¶ 14; Def. Br. at 1.

## C.   The Civil Action

In this Court, Iusacell brings an action against only IBM. The factual allegations of Iusacell's Complaint mirror those in the Answer and Counterclaims that Iusacell filed in the ICC

arbitration.   In sum, the Complaint alleges that IBM "knowingly misrepresented material facts" -- representing that "IBM would 'assume all IT risk' and provide 'virtually unlimited' resources to Iusacell" even though "IBM only intended to provide limited and fixed amounts of capacity to Iusacell, even if such amounts were inadequate to fulfill its Mexican subsidiary's contractual obligations to Iusacell" -- "in order to induce Iusacell to enter into a contractual relationship with IBM's subsidiary," Compl. ¶¶ 69, 71; that "IBM continued to intentionally and knowingly conceal material facts from Iusacell" after performance of the MSA commenced "to deter Iusacell from terminating the MSA," id. ¶ 72; and that Iusacell reasonably relied on IBM's misrepresentations, id. ¶¶ 74-75.

Iusacell argues that this action is governed by Mexican law.   Id. ¶ 6; Pl. Br. at 2 n.*.   Iusacell alleges that, under Mexican law, "IBM's illicit conduct constituted dolo and accordingly, Iusacell is entitled to recover both its actual damages and lost profits," Compl. ¶ 6, including "lost revenue of some US$2.5 billion," id. ¶ 77.

IBM, which has not answered the Complaint, moved to stay this action on June 6, 2014.   The motion was fully briefed on August 25, 2014, and the Court heard oral argument on October 2, 2014.

9

## DISCUSSION

### A.   A Stay Is Warranted

A district court may stay an action involving a nonparty to a pending arbitration "on the ground that the resolution of issues in [the] arbitration may be determinative of issues in the case." Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991); see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983).   The party seeking such a discretionary stay has the "burden of establishing that a stay is warranted."   Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 442 (2d Cir. 1964) ("Nederlandse Erts"); see also Sierra Rutile, 937 F.2d at 750 (2d Cir. 1991) (describing this burden as "heavy").[4]

To show that a stay is warranted, "[t]he movant must initially establish that 'there are issues common to the arbitration and the court proceeding,' and that 'those issues will be finally determined by arbitration.'"   Alghanim v. Alghanim, 828 F. Supp. 2d 636, 664 (S.D.N.Y. 2011) (quoting Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc., 885 F. Supp. 499, 502 (S.D.N.Y. 1995)).[5]   The movant must also

---

[4]   IBM, a nonparty to the MSA, does not rely on the mandatory stay provision of the Federal Arbitration Act.   See 9 U.S.C. § 3; WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 75 (2d Cir. 1997) ("ordinarily [an arbitration] clause in a contract cannot justify a stay under § 3 of the FAA as to someone who was not a party to the contract").

[5]   The commonality test has also been described as requiring that "common issues of law and fact are likely to be determined in the arbitration." Hikers Indus., Inc. v. William Stuart Indus. (Far E.) Ltd., 640 F. Supp. 175,

"demonstrate to the satisfaction of the court that [it has] not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." Nederlandse Erts, 339 F.2d at 442 (footnote omitted). "A stay is 'particularly appropriate' where it 'promote[s] judicial economy, avoidance of confusion and possible inconsistent results.'" Alghanim, 828 F. Supp. 2d at 665 (quoting Birmingham Assocs. Ltd. v. Abbott Labs., 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008)).

On each of these factors, IBM has met its burden. First, the ICC arbitration involves numerous issues of law and fact in common with this action. In the arbitration, Iusacell has pleaded a "[counterc]laim against IBM Mexico for awareness of and benefiting from [IBM's] dolo." Arb. Ans. at 23 (heading VI.C.). Plainly, this counterclaim relies upon the same facts and legal theory as the claim Iusacell asserts in this Court. Thus, Iusacell has invited the arbitrators to determine the ultimate issue before this Court.[6]

---

178 (S.D.N.Y. 1986) (emphasis added). We need not parse the difference, if any, between these two formulations of the test, because IBM satisfies both.

[6] Even though Section VI.C. of the Arbitration Answer is styled as a counterclaim, counsel for Iusacell contended at oral argument that the role of dolo in the arbitration is instead a "rebuttal to a defense." Tr. at 27. Regardless of this effort at recharacterization, Iusacell undertakes to prove IBM's dolo both here and in the arbitration.

We acknowledge that the arbitrators might not reach the dolo issue as IBM Mexico has contended that they should not, because the MSA contains an integration clause.  Arb. Reply ¶ 28.  But even if the arbitrators agree with IBM Mexico that they should not consider Iusacell's dolo argument as such, they will certainly address the dolo claim's underlying premise that IBM Mexico breached the MSA.   The Complaint alleges "facts [that] put the lie not only to IBM's pre-contractual representations but as well to the very commitments undertaken by IBM Mexico in its contract with Iusacell."  Compl. ¶ 4.  The principal question in the arbitration is whether Iusacell or IBM Mexico breached the MSA; thus, the arbitrators will necessarily reach an issue that is crucial to this action.  As Iusacell concedes, "the issue of breach is a common issue."  Tr. at 43.

Second, the arbitration schedule, under which the final hearing will commence in February 2016, is reasonable given the amounts at stake and the complexity of the issues.  See Donjon Marine Co. v. Water Quality Ins. Syndicate, 523 F. App'x 738, 740 (2d Cir. 2013) (considering the reasonableness of an arbitration's duration in light of the likely duration of federal litigation).   In our experience, a civil action involving a claim for hundreds of millions of dollars and a counterclaim for billions would be unlikely to proceed to trial any more expeditiously.   Similarly, it is unlikely that the

instant action -- which involves nearly all of the issues that Iusacell raises in the arbitration -- could proceed to trial any more quickly.  That the expected duration of the arbitration is reasonable is further supported by the fact that it is consistent with Iusacell's preferences.   Indeed, Iusacell proposed a January 2016 date for the final arbitration hearing. Wachtell Ltr. at 2; González Reply Decl. ¶¶ 7-8; Tr. at 19-20. Under the circumstances, it is reasonable not to expect an arbitration award until 2016.

Iusacell argues the arbitration timeline is unreasonable in light of the MSA's unusual provision purporting to allow the appeal of questions of law to the Mexican courts.  Iusacell has submitted a declaration from an expert on Mexican law who opines that the validity of such a provision is an issue of first impression.  Von Wobeser Decl. ¶¶ 27, 29, 36.  The expert concludes that, in part because of this unprecedented threshold issue, "[s]everal years of post-award court litigation is reasonably predictable."  Id. ¶ 37.

This prospect does not dissuade us from granting a stay. We note that IBM Mexico proposed, while this motion was being briefed, to delete the appeal provision from the arbitration agreement, but Iusacell declined the proposal.  Vance Reply Decl. Exs. 1-2; Tr. at 40-41.  Thus, Iusacell itself bears responsibility for the potential duration of post-award

13

proceedings.    More  importantly,  the  Court  may  lift  a  stay
whenever  it  proves  no  longer  warranted.    The  appropriateness  of
a  stay  pending  an  as-yet  hypothetical  appeal  is  likely  to  turn
on  the  result  of  the  arbitration  and  the  issues  to  be  raised
upon  appeal.    Thus,  a  stay  may  appropriately  be  entered  now
without  reaching  the  unripe  question  of  whether  it  should  later
be  vacated  pending  an  appeal.

     Third,  there  is  no  basis  to  conclude  that  the  arbitration
will  be  hampered  by  either  IBM  Mexico,  the  entity  that  initiated
arbitration,  or  IBM,  which  has  guaranteed  IBM  Mexico's
obligations  under  an  arbitration  award.    Iusacell  treats  IBM
Mexico's  argument  that  the  MSA's  integration  clause  should
preclude  the  arbitrators  from  reaching  the  <u>dolo</u>  issue  as
evidence  of  obstruction.  Pl. Br. at 14.  But  the  assertion  of  a
colorable  defense  in  the  arbitration  is  not  the  equivalent  of  an
attempt  to  hamper  it.    Iusacell  also  argues  that  IBM  is
hampering  the  arbitration  by  failing  to  agree  to  comply  with
discovery  demands  as  though  it  were  a  party  to  the  arbitration.
<u>Id.</u> at 15.[7]  We disagree.  Counsel  for  Iusacell  has  acknowledged
that  the  arbitral  tribunal  will  not  compel  discovery  of  nonparty
entities.  Tr. at 30.  IBM's  decision  not  to  bind  itself  to  that

---

[7]     At  oral  argument,  counsel  for  IBM  stated  that  IBM  had  rejected
Iusacell's  proposal  that  "any  discovery  requests  that  [Iusacell]  made  to  IBM
Mexico  will  also  be  treated  as  having  been  made  to  IBM  Corporation."  Tr. at
36.

which the tribunal does not demand is not obstruction of the arbitration.

Fourth, Iusacell will suffer no undue hardship from a stay. Iusacell asserts that any delay of discovery will tend to "negatively impact the quality of available discovery." Pl. Br. at 22.  However, the risk of evidence growing stale is lessened where, as here, "many, if not all, of the issues in the action will be touched on in the arbitration." Orange Chicken, L.L.C. v. Nambé Mills, Inc., No. 00 Civ. 4730 (AGS), 2000 WL 1858556, at *10 (S.D.N.Y. Dec. 19, 2000).  Not only is there an overlap of issues, but IBM's financial interest in the result of the arbitration is likely to lead to its active participation in the preparation of evidentiary submissions.[8]  Further, IBM accepts that it is "legally obligated to preserve any documents relating to this dispute as a result of both the instant action and the Arbitration." Def. Reply Br. at 9.

Finally, granting a stay will promote economy for both the Court and the parties and limit the likelihood of inconsistent results.  Iusacell concedes that if it prevails on all of its claims in the arbitration, this litigation will be mooted by IBM's guarantee of an award against IBM Mexico. Pl. Br. at 18;

---

[8]    As counsel for IBM stated at oral argument, it can reasonably be anticipated that IBM Mexico will proffer to the arbitrators "evidence involving IBM Corporation that seeks to defeat the allegations that IBM Corporation committed the [d]olo that it[ is] alleged to have committed[,] because it wants to win the case." Tr. at 36.

Tr. at 15.   Iusacell further concedes that Iusacell's claim against IBM could not survive if IBM Mexico prevails in the arbitration on the basis of a "full and fair hearing" with "no error of law."   Tr. at 43-44.   Thus, there is a substantial likelihood that this action will be unnecessary.[9]

Even in the event of an imperfect arbitration, it is clear that the arbitration's result will "provide significant insight into . . . the related claim[] asserted in this action." Alghanim, 828 F. Supp. 2d at 665 (quoting Orange Chicken, 2000 WL 1858556, at *9).   Indeed, even the prospect of an appeal to Mexican courts comes with a silver lining, as the Court and the parties would benefit from an authoritative application of Mexican law to the facts of this case.

In sum, IBM's motion for a stay should be granted.[10] However, the Second Circuit has made clear that a district court should entertain appropriate motions to vacate a stay.   See, e.g., WorldCrisa, 129 F.3d at 76.   Thus, the Court will entertain a future motion to vacate the stay on the basis of materially changed circumstances.   Additionally, in order to monitor the continued appropriateness of the stay, the parties are directed to report jointly on the progress of the

---

[9]   We do not opine on whether the arbitration award will be entitled to preclusive effect in this Court.
[10]   Iusacell also argues that a stay is improper under Mexican law.   Pl. Br. at 20-21.   However, the manner in which this Court is to manage its docket is self-evidently a question of United States law.

arbitration on May 15, 2015, and every six months thereafter. The parties are further directed to report the final disposition of the arbitration within thirty days, including a representation as to whether either Iusacell or IBM Mexico intends to avail itself of the MSA's provision for challenging an award in Mexican courts.

**B.   Discovery Is Stayed**

Iusacell argues that, even if other pretrial proceedings are to be stayed, the Court should permit discovery. Iusacell contends that "[w]hen necessary to prevent undue prejudice, courts routinely permit claims to proceed contemporaneously with arbitration proceedings, at least through the completion of discovery." Pl. Br. at 22 (internal quotation marks omitted).

We question whether the practice of permitting discovery to proceed notwithstanding a stay is "routine[]" in light of our observation that in many of Iusacell's authorities, the courts that permitted discovery declined altogether the invitation to stay proceedings. See, e.g., AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., No. 02 Civ. 1363 (PKL), 2003 WL 21203503, at *12 (S.D.N.Y. May 22, 2003) ("On balance, there is no need to stay this action."); Wright v. SFX Entm't Inc., No. 00 Civ. 5354 (SAS), 2001 WL 103433, at *6 (S.D.N.Y. Feb. 7, 2001) ("[Defendant] has not satisfied the heavy burden of

demonstrating that he is entitled to a stay."); see also E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc., No. 97 Civ. 7102 (LAK), 1998 WL 314767, at *6 (S.D.N.Y. June 15, 1998) (declining to stay certain claims pending arbitration, but reserving "question of whether to stay any trial" for a later time).

Nonetheless, even assuming that Iusacell's statement correctly characterizes the practice of courts within this Circuit, we have already explained why Iusacell will not suffer "undue prejudice" from staying discovery.  In contrast, to permit discovery to go forward under the federal rules would tend to undermine the arbitration.  Indeed, considering the nearly total overlap between this action and the arbitration, the possibility that Iusacell will recover all of its alleged damages in the arbitration, and the incentive that IBM has to participate in the arbitration in light of its guarantee of an award against its subsidiary, it is hard not to conclude that Iusacell's motivation for pursuing this action now is to gain tactical advantage in the arbitration.  An obvious alternative would have been an agreed-upon toll of the statute of limitations for any separate action against IBM.  IBM would have had no reason not to consent to such a proposal by Iusacell.[11]

---

[11]    In an analogous context, the Court of Appeals has explained that "where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect in the arbitration, 'such a maneuver should not be allowed to succeed, and is

Therefore, the Court declines to permit discovery to proceed during the stay of this action.

## CONCLUSION

For the foregoing reasons, defendant's motion (Doc. No. 15) is granted. This action is stayed in all respects. The parties are directed to submit a joint letter to report on the progress of the arbitration on May 15, 2015, and every six months thereafter. The parties are further directed to report the final disposition of the arbitration within thirty days, including a representation as to whether either Iusacell or IBM Mexico intends to avail itself of the MSA's provision for challenging an arbitration award.


Dated:    New York, New York
          November 14, 2014


NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

blocked by the principles of parallel-proceeding abstention, which require the court to stay the proceedings before it and let the arbitration go forward unimpeded.'" WorldCrisa, 129 F.3d at 76 (quoting IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 530 (7th Cir. 1996)) (brackets and ellipses omitted). Similarly, to permit federal discovery now would inherently tend to disrupt the ongoing arbitration.

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorneys for Plaintiff**

Herbert M. Wachtell, Esq.
Jonathan M. Moses, Esq.
Olivia A. Maginley, Esq.
Cynthia Fernandez Lumermann, Esq.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019

**Attorneys for Defendants**

Richard I. Werder, Jr., Esq.
Robert P. Vance, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010